**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIE ANN MORR, | ) | CASE NO. 3:13-CV-01476 |
| | ) | |
| Plaintiff, | ) | JUDGE CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Julie Ann Morr ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.   PROCEDURAL HISTORY

On June 10, 2010, Plaintiff filed an application for POD and DIB, alleging a disability onset date of May 1, 1998.  (Transcript ("Tr.") 36.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On April 23, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff was represented by an attorney and testified.  (*Id.*)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On May 4, 2012, the ALJ found that

Plaintiff was not disabled. (Tr. 33.) The Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.) On July 9, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 18, 19, 20.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinions of Plaintiff's treating physician; and (2) the ALJ erred in evaluating Plaintiff's credibility.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born in November 1959 and was 47-years-old on the date she was last insured. (Tr. 42.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as an assembler products worker. (*Id.*)

### B.   Medical Evidence

Plaintiff underwent a left knee arthroscopy in 1985. (Tr. 296.) In 1990, she incurred a cervical spine injury in a motor vehicle accident. (Tr. 272.) Treatment notes from John T. Kane, M.D., dated February 1991, note that the motor vehicle accident caused Plaintiff a great deal of neck pain and dysfunction. (*Id.*) An electromyelogram (EMG), however, was inconclusive. (*Id.*)

In March 1995, Plaintiff saw K.J. Kolovich, M.D., for complaints of pain in her left wrist. (Tr. 297.) Dr. Kolovich diagnosed de Quervain's tendonitis. (*Id.*)

Following medical treatment for right knee pain, Plaintiff underwent arthroscopic

surgery with debridement and lateral retinacular release on December 14, 2001. (Tr. 257.) Dr. Kolovich observed that Plaintiff was doing "reasonably well" a week later, and instructed her to perform range of motion and strengthening exercises. (Tr. 257.) Plaintiff underwent physical therapy, and on January 11, 2002, Dr. Kolovich noted that she had 30 to 90 degrees of flexion. (Tr. 254.) On January 28, 2002, Plaintiff's flexion range of motion increased to 100 degrees, and Dr. Kolovich opined that Plaintiff might be able to perform sit-down work in the near future. (Tr. 253.) In February 2002, Dr. Kolovich opined that Plaintiff could return to work for four hours a day in a seated job for the next two to three weeks. (Tr. 252.)

Plaintiff returned to Dr. Kolovich on April 25, 2002, for a checkup of her right knee. (Tr. 250.) Plaintiff's knee remained painful despite a Kenalog injection administered earlier in the month. (*Id.*) A physical examination revealed that Plaintiff could ambulate with a cane and limped secondary to right knee pain. (*Id.*)

In May 2002, Plaintiff underwent a total right knee replacement. (Tr. 230, 288-290.) At her initial post-operative examination, Dr. Kolovich observed no signs of infection and a well-tolerated range of motion. (Tr. 248.) On June 3, 2002, Dr. Kolovich observed full range of motion on extension and 90 degrees on flexion, and a well-healed surgical incision. (Tr. 247.) He referred Plaintiff to physical therapy. (*Id.*) On June 24, 2002, Dr. Kolovich reviewed an x-ray of Plaintiff's right knee and noted a "good appearance" of her right total knee prosthesis. (Tr. 246.) Dr. Kolovich also reviewed the notes from Plaintiff's physical therapist, which revealed that Plaintiff had 95 degrees of flexion and satisfactory extension. (*Id.*) Dr. Kolovich prescribed medication and advised Plaintiff to continue physical therapy. (Tr. 246.)

In August 2002, Dr. Kolovich reported that Plaintiff's right knee incision appeared to be well-healed, her right knee motion was from full extension to 100 degrees of flexion, and there were no signs of infection or deep vein thrombosis. (Tr. 245.) Dr. Kolovich noted that Plaintiff intended to reapply for her job and would benefit from a sit-down position. (*Id.*) A January 2003 examination revealed a satisfactory gait pattern and no pain, and Dr. Kolovich opined that Plaintiff was doing very well with her right knee. (Tr. 244.)

Plaintiff also complained of pain in her wrist during the relevant period. On June 26, 2003, Plaintiff saw Larry Kennedy, M.D., for electrodiagnostic testing. (Tr. 239.) An abnormal nerve conduction study revealed bilateral wrist median mononeuropathy which was consistent with a mild degree of bilateral carpal tunnel syndrome. (*Id.*) Dr. Kennedy noted that surgical release of the carpal tunnel was not necessary and suggested conservative treatment. (Tr. 240.) A September 2003 x-ray of Plaintiff's right wrist revealed normal results. (Tr. 310.) In January 2003, physical therapist Robert Paisie, PT, DPT, MTC, discharged Plaintiff from physical therapy after she reported an 80% improvement in her right wrist pain. (Tr. 214.) Dr. Paisie noted that Plaintiff had made excellent progress with her rehabilitation. (*Id.*) He placed her on a home exercise program and opined that her progress was good to excellent. (*Id.*)

In July 2004, Plaintiff fell and injured her right knee while walking on rocks. (Tr. 230.) She was treated with Hydrocodone and Aleve and ambulated with a limp. (*Id.*) A physical examination revealed no pain in the right hip and no significant right knee swelling or effusion. (*Id.*) She had a contusion about the anterior aspect of her right

4

knee, and an examination of her right ankle was unremarkable. (*Id.*)

In October 2004, Plaintiff complained of pain in her right upper extremity. (Tr. 229.) A physical examination revealed de Quervain's tendonitis, and Plaintiff elected to undergo surgery. (Tr. 229.) On November 11, 2004, Dr. Kolovich examined Plaintiff's right wrist and hand, observed that her incision was well-healed, and noted that she was doing "reasonably well" despite some discomfort. (Tr. 227.) He instructed Plaintiff to attend physical therapy three times a week for the next three weeks. (*Id.*) Dr. Kolovich noted that if Plaintiff "were working outside of the home, I doubt that she would be able to return to work at this time." (*Id.*)

In December 2004, Dr. Paisie noted that Plaintiff had made progress in physical therapy for her right wrist. (Tr. 334.) Plaintiff reported that she felt 65-70% better but had pain with resistive gripping and pinching as well as intermittent numbness and tingling over the long and ring fingers. (*Id.*) Dr. Paisie recommended that Plaintiff continue with physical therapy to improve strength and functional tolerances. (*Id.*)

In January 2005, Plaintiff returned to Dr. Kolovich for a check-up of her right wrist and hands. (Tr. 225.) Dr. Kolovich noted that Plaintiff had met all of her rehabilitation goals and had denied any significant pain. (*Id.*)

Plaintiff underwent endometrial ablation surgery in April 2006. (Tr. 323-325.) Treatment notes from October 2007 reveal that Plaintiff was employed as a dishwasher. (Tr. 317.) In October 2009, Glen Seaman, M.D., diagnosed Plaintiff with hypertension and prescribed medication. (Tr. 316.)

In March 2012, Plaintiff complained of pain, swelling, stiffness, clicking, grating,

and popping in her left knee.  (Tr. 314.)  She was able to straighten her knee, and she denied any sensation of something floating in her knee.  (*Id.*)  X-rays revealed advanced osteoarthritis in her left knee and status post right knee arthroplasty with a prosthesis in good position.  (Tr. 309.)

A March 2012 chest x-ray revealed chronic obstructive pulmonary disease and chronic interstitial changes.  (Tr. 308.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

Plaintiff lived in a house with her husband and cat.  (Tr. 13.)  She was able to cook, dust, vacuum, do laundry, wash dishes, pick up trash, bathe and dress herself, go to the store, visit friends, watch television, and read.  (Tr. 13, 16-17.)  Plaintiff testified that she could no longer work full time due to having had two knee replacements, depression, and deep core vein tendinitis in both hands.  (Tr. 14.)  She stated that her health problems just started getting worse within the past year and that she probably could have worked at a sit-down job two years ago.  (Tr. 18.)

    **2.    Vocational Expert's Hearing Testimony**

Joy Kilpatrick, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual with Plaintiff's vocational characteristics who could perform a range of light work with the following limitations: never climbing ladders, ropes, or scaffolds; occasional kneeling, crouching, and crawling; frequent gross and fine manipulation with the right upper extremity; no concentrated exposure to environmental irritants such as fumes, odors, dusts, or gases in poorly ventilated areas;

6

and no concentrated exposure to moving machinery or unprotected heights.  (Tr. 27.) The hypothetical individual would be further limited to performing simple, routine, repetitive tasks in an environment free of fast-paced production requirements and work involving only simple work-related decisions and routine workplace changes.  (*Id.*)  The VE testified that the hypothetical individual could perform light, unskilled work that existed in significant numbers in the national economy, including the representative occupations of office helper, ticket seller, and information clerk.  (*Id.*)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant

7

must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 1998, through her date last insured of June 30, 2007.

3. Through the date last insured, the claimant had the following severe impairments: status post right knee replacement, status post wrist surgery, morbid obesity, and depression.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

8

        404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant could lift/carry up to 20 pounds occasionally, 10 pounds frequently, stand/walk for about six hours, and sit for up to six hours in an eight-hour workday, with normal breaks. She would be limited to no climbing of ladders/ropes/scaffolds, but could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant would be limited to frequent gross and fine manipulation with the right upper extremity. The claimant would need to avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. She would need to avoid concentrated use of moving machinery and exposure to unprotected heights. In addition, the claimant would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born in November 1959 and was 47-years-old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 1998, the alleged onset date, through June 30, 2007, the date last insured.

(Tr. 38-43.)

**LAW & ANALYSIS**

    A.    **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignments of Error

####      1.  The ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ erred in failing to give controlling weight to the following opinions from Plaintiff's treating physician, Dr. Kolovich: (1) His February 18, 2002, opinion that Plaintiff would be able to return to work for four hours per day at a sit-down job (Tr. 252); (2) his August 5, 2002, opinion that Plaintiff would benefit from a sit-down job (Tr. 245); and (3) his November 11, 2004, opinion that "I doubt that [Plaintiff] would be able to return to work at this time." (Tr. 227).  For the following reasons, Plaintiff's argument is without merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir.

11

2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain her reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

Here, while Dr. Kolovich was one of Plaintiff's treating physicians, the ALJ did not err in failing to give his opinions controlling weight or providing good reasons for rejecting them. As Defendant correctly notes, Dr. Kolovich's three opinions relating to Plaintiff's ability to return to work following her right knee and right wrist surgeries are not opinions of a medical condition, but rather are opinions of disability that are reserved for the ALJ. It is well established that certain issues are reserved to the Commissioner for determination. *See* 20 C.F.R. § 416.927(d). Among these are whether a claimant is disabled. *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). To give controlling weight to a physician's statements that a claimant is disabled or unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P (S.S.A July 2, 1996).

The ALJ had no obligation to rely on an opinion of disability from a physician not well-versed in Social Security regulations. Medical opinions from a treating source,

not statements regarding disability, are entitled to deference.  *See Turner v. Comm'r of Soc. Sec.,* 381 Fed. Appx. 488, 492-493 (6th Cir. 2010) (unpublished) ("Dr. Wright's statement that Turner was not 'currently capable of a full-time 8-hour workload' was simply an alternate way of restating his opinion that Turner was 'unable to work.'  It was thus an opinion on an issue reserved to the Commissioner and was not entitled to any deference.").  "When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is 'disabled' or 'unable to work'–the opinion is not entitled to any particular weight." *Id.* at 493.  Plaintiff has pointed to no evidence in the record suggesting that Dr. Kolovich has ever rendered an opinion regarding Plaintiff's residual functional capacity (RFC) or assigned her specific functional limitations.  It appears that the only opinions Dr. Kolovich rendered include generalized doubts regarding Plaintiff's ability to work.  Accordingly, the ALJ did not err in failing to give controlling weight to Dr. Kolovich's opinions that Plaintiff could not work or could only perform sit-down jobs, as the ALJ was not required to defer to Dr. Kolovich's opinion on that subject.

**2.  The ALJ Erred in Evaluating Plaintiff's Credibility.**

Plaintiff's second assignment of error takes issue with the ALJ's assessment of Plaintiff's credibility.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and

based on evidence from the record.  See *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for his credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints.  See *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence,

including six different factors.[1]  See *Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in her assessment of Plaintiff's condition. (Tr. 38-42.)  The ALJ examined Plaintiff's daily activities, her treatments and her responses to those treatments, and the clinical examination findings.  Thus, the ALJ considered the relevant evidence.  (*Id.*)

Moreover, in assessing Plaintiff's limitations, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  (Tr. 41.)  Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, she determined that her RFC assessment adequately

---

[1] These factors include the following:
(1) the claimant's daily activities;
(2) the location, duration, frequency, and intensity of the claimant's alleged pain;
(3) precipitating and aggravating factors;
(4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
(5) treatments other than medication that the claimant has received to relieve the pain; and
(6) any measures that the claimant takes to relieve his pain.

accounted for Plaintiff's limitations based on a careful consideration of the evidence. In finding that Plaintiff was capable of performing a limited range of light work despite her limitations, the ALJ explained:

> The claimant reported good activities of daily living and had very little medical treatment between her alleged onset date and her date last insured. Furthermore, the claimant testified herself that she probably could have worked two years ago. Even though the claimant had knee surgery in 2002 she continued to work. After the date last insured, she had surgery on her left knee, which caused her to be placed on a walker and a cane by her doctor.
>
> In terms of the claimant's alleged medical complaints, they are not supported by medical findings and they are contradicted by medical doctors, the assessments of the consultative examiner, the vocational expert's testimony, and the claimant's own activities, such as providing for his [sic] own personal grooming, cleaning, cooking daily for up to [an] hour, watching television, washing dishes three times daily, doing laundry, caring for cats, and driving.

(Tr. 41-42.) Thus, the ALJ did not merely provide boilerplate language in assessing Plaintiff's credibility. The ALJ specifically compared Plaintiff's alleged physical and mental health symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record, including her own testimony regarding her daily activities. This inconsistency is an appropriate basis for an adverse credibility finding. *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") Accordingly, Plaintiff's second assignment of error does not present a basis for remand.

16

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: August 7, 2014

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).