**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Julie Ann Morr,                                Case No. 3:13CV01476

       Plaintiff,

     v.                                    **ORDER**

Carolyn W. Colvin,
       Acting Commissioner of Social Security,

       Defendant

The Social Security Administration (SSA) denied plaintiff Julie Ann Morr's application for Period of Disability (POD) and Disability Insurance Benefits (DIB), Plaintiff appealed to this court, 42 U.S.C. § 405(g), and the Magistrate Judge's Report and Recommendation (R&R) concluded that I should affirm that decision. (Doc. 21). Plaintiff filed timely objections. (Doc. 22).

For the reasons set forth below, I affirm the Magistrate Judge's recommendation and overrule plaintiff's objections.

**Background**

The R&R sets forth the factual and procedural background in detail, so I summarize only the relevant evidence.

Plaintiff was born in 1959 and has at least a high school education. She has past relevant work as an assembly products worker.

**A. Plaintiff's Medical History**

Morr has received medical care for pain in her knees, spine, wrists, and hands. Her medical history also demonstrates she has hypertension, lung problems, and has undergone endometrial ablation surgery.

Morr had a left knee arthroscopy in 1985.

In 1990, she incurred a cervical spine injury in a car accident and was treated by Dr. Kane. Dr. Kane noted the car accident caused Morr a great deal of neck pain and dysfunction, but an electromyelogram (EGM) was inconclusive.

In 1995, Morr returned to Dr. Kolovich after experiencing pain in her left wrist. Dr. Kolovich diagnosed her with de Quervain's tendonitis.

On December 14, 2001, following medical treatment for right knee pain, Morr underwent arthroscopic surgery with debridement and lateral retinacular release. A week later, Dr. Kolovich observed Morr was doing "reasonably well" and instructed her to perform a range of motion and strengthening exercises.

Plaintiff underwent physical therapy, and Dr. Kolovich noted that Morr had 30 to 90 degrees of flexion on January 11, 2002. On January 28, 2002, Morr's flexion range of motion increased to 100 degrees, and Dr. Kolovich opined that Morr might be able to perform sit-down work in the near future. In February 2002, Dr. Kolovich determined that Morr could return to work for four hours a day in a seated job for the next two to three weeks.

On April 25, 2002, Morr had a checkup with Dr. Kolovich regarding her right knee. This knee remained painful despite a Kenalog injection administered earlier in the month. A physical examination revealed that Morr could ambulate with a cane and limped secondary to right knee pain.

Morr underwent a total right knee replacement in May 2002. At her post-operative exam, Dr. Kolovich observed no signs of infection and a well-tolerated range of motion. On June 3, 2002, Dr. Kolovich observed a full range of motion on extension, 90 degrees on flexion, and a well-healed surgical incision. Dr. Kolovich referred Morr to physical therapy.

On June, 24, 2002, Dr. Kolovich reviewed an x-ray of Morr's right knee and noted a "good appearance" of her right total knee prosthesis. Dr. Kolovich also reviewed notes from Morr's physical therapist, which indicated Morr had 95 degrees of flexion and satisfactory extension. Dr. Kolovich prescribed medication and told Morr to continue with physical therapy.

In August 2002, Dr. Kolovich reported Morr's right knee incision was well healed, and that Morr's right knee motion was from full extension to 100 degrees of flexion, with no signs of infection or deep vein thrombosis. Dr. Kolovich noted that Morr intended to reapply for her job and would benefit from a sit-down position. A January 2003 examination revealed a satisfactory gait pattern and no pain, and Dr. Kolovich opined that Morr was doing very well with her right knee.

During the relevant period, Morr also complained of right wrist pain and sought out Dr. Kennedy for electrodiagnostic testing. An abnormal nerve conduction study revealed bilateral wrist median mononeuropathy, consistent with mild bilateral carpal tunnel syndrome. Dr. Kennedy noted that surgical release of the carpal tunnel was not necessary and suggested conservative treatment. A September 2003 x-ray of Morr's right wrist revealed normal results. In January 2003, Morr was discharged from physical therapy after she reported an 80% improvement in her right wrist pain. Her physical

3

therapist, Robert Paisie, noted that Morr had made excellent progress with her rehabilitation. He also placed her on a home exercise program and opined that her progress was good to excellent.

In July 2004, Morr fell and injured her right knee. She was treated with Hydrocodone and Aleve and ambulated with a limp. A physical examination revealed no pain in her right hip and no significant right knee swelling or effusion. She had a contusion above the anterior aspect of her right knee, and an examination of her right ankle was unremarkable.

In October 2004, Morr complained of pain in her right upper extremity. A physical examination revealed de Quervain's tendonitis, and Moor elected to undergo surgery. On November 11, 2004, Dr. Kolovich examined Morr's right wrist and hand and observed that her incision was well healed. Dr. Kolovich also noted Morr was doing "reasonably well" despite some discomfort. He instructed Morr to attend physical therapy three times a week for the next three weeks. Moreover, Dr. Kolovich notes that if Morr "were working outside of the home, I doubt that she would be able to return to work at this time."

In December 2004, Morr's physical therapist, Dr. Paisie, noted that Morr's right wrist had made progress. Morr reported she felt 65-70% better but had pain with resistive gripping and pinching as well as intermittent numbness and tingling over the long and ring fingers. Dr. Paisie recommended that Morr continue with physical therapy to improve strength and functional tolerances.

In January 2005, Morr returned to Dr. Kolovich for a check-up of her right wrist and hands. Dr. Kolovich noted that Morr had met all of her rehabilitation goals and had denied any significant pain.

In April 2006, Morr underwent endometrial ablation surgery. Treatment notes from October 2007 indicate that Morr was employed as a dishwasher.

In October 2009, Dr. Seaman diagnosed Morr with hypertension and prescribed medication.

In March 2012, Morr complained that her left knee had pain, and was swelling, stiff, clicking, grating, and popping.  Morr was able to straighten her knee, and she denied any sensation of something floating in her knee. X-rays revealed advanced osteoarthritis in her left knee and status post right knee arthroplasty with a prosthesis in good position.

Also in March 2012, a chest x-ray revealed Morr had chronic obstructive pulmonary disease and chronic interstitial changes. Morr is morbidly obese.

### B. ALJ Hearing Testimony

Morr applied for POD and DIB, alleging a disability onset date of May 1, 1998. The SSA denied the application initially and upon reconsideration, and Moor requested a hearing before an Administrative Law Judge (ALJ). The hearing took place on April 23, 2012.

### 1. Morr's Testimony

Morr was represented by an attorney and testified. Morr testified she could cook, dust, vacuum, do laundry, wash dishes, pick up trash, bathe and dress herself, go to the store, visit friends, watch television, and read. Morr also testified she could no longer work full time due to having had two knee replacements, depression, and deep core vein

5

tendinitis in both hands. She stated her health problems got worst within the last year and that she probably could have worked at a sit-down job two years ago.

### 2. Vocational Expert's Testimony

In addition to Morr, a vocational expert (VE) appeared and testified. The ALJ asked the VE to assume a hypothetical individual with Morr's vocational characteristics who could perform a range of light work with the following limitations: never climbing ladders, ropes, or scaffolds; occasional kneeling, crouching, and crawling; frequent gross and fine manipulation with the right upper extremity; no concentrated exposure to environmental irritants such as fumes, odors, dusts, or gases in poorly ventilated areas; and no concentrated exposure to moving machinery or unprotected heights. The hypothetical individual would be further limited to performing simple, routine, repetitive tasks in an environment free of fast-paced production requirements and work involving only simple work-related decisions and routine workplace changes. The VE testified that the hypothetical individual could perform light, unskilled work that existed in significant numbers in the national economy, including the representative occupations of office helper, ticket seller, and information clerk.

### C. The ALJ's Decision

On May 4, 2012, the ALJ issued a decision finding that Morr was not disabled. The ALJ concluded that Morr had severe impairments including a status post right knee replacement, status post wrist surgery, morbid obesity, and depression.

The ALJ then concluded Morr had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Morr can only

6

occasionally: lift up to 20 pounds, lift 10 pounds frequently, stand/walk for about six hours, and sit for up to six hours in an eight-hour workday, with normal breaks.

The ALJ limited Morr to frequent gross and fine manipulation with the right upper extremity and determined Morr needed to avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. Morr also needed to avoid concentrated use of moving machinery and exposure to unprotected heights. Additionally, the ALJ limited Morr to work that would be simple, routine, and repetitive, in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes.

Given the RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Morr could have performed.

Morr requested review of the ALJ's decision, but the Appeals Council denied that request. Morr then brought this suit under 42 U.S.C. § 405(g), contending that the Commissioner's decision should be reversed and the case remanded.

**Standard of Review**

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the [Social Security] Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). I review the Commissioner's decision to determine whether "it is supported by substantial evidence and was made pursuant to proper legal standards." *Id.*

Substantial evidence is evidence that a reasonable mind would accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can

7

go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Whether the ALJ has supported the decision with substantial evidence is a question answered in light of "the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 2009).

Because Morr filed timely objections, I conduct a de novo review of those parts of the R&R to which she specifically objects. 28 U.S.C. § 636(b)(1).

## Discussion

Morr asserts the ALJ's RFC was not based on substantial evidence from the record. Specifically, Morr objects to the RFC on the grounds that the ALJ: 1) declined to afford Dr. Kolovich's opinion controlling weight; and 2) the ALJ erred in evaluating Morr's credibility.

### A. Issue 1: Controlling Weight

Morr asserts the ALJ failed to give controlling weight to the following opinions from Morr's treating physician, Dr. Kolovich: 1) his February 18, 2002, opinion that Morr would be able to return to work for four hours per day at a sit-down job; 2) his August 5, 2002, opinion that Morr would benefit from a sit-down job; and 3) his November 11, 2004, opinion that "I doubt that [Morr] would be able to return to work at this time."

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). Contrariwise, a treating source's opinion may

8

be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, *supra*, 378 F.3d at 544 (quoting Social Security Ruling 96-2p, 1996 WL 374188, *5).

The ALJ did not err in failing to give Dr. Kolovich's opinions controlling weight or providing good reasons for rejecting them. This is because Dr. Kolovich's three opinions are not opinions of a medical condition, but rather are opinions of disability that are reserved for the ALJ.  20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability . . . A statement by a medical source that your are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

To give controlling weight to a physician's statements that a claimant is disabled or unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Social Security Ruling 96-5P (July 2, 1996).

Medical opinions from a treating source, not statements regarding disability, are entitled to deference. *See Turner v. Comm'r of Soc. Sec.*, 381 F.App'x 488, 492-493 (6th Cir. 2010) (Unpublished disposition) ("Dr. Wright's statement that Turner was not 'currently capable of a full-time 8-hour workload' was simply an alternate way of

9

restating his opinion that Turner was 'unable to work.' It was thus an opinion on an issue reserved to the Commissioner and was not entitled to any deference.") "When a treating physician instead submits an opinion on an issue reserved to the Commissioner - such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Id.* at 493.

There is no evidence in the record that Dr. Kolovich ever rendered an opinion regarding Morr's RFC or assigned Morr specific functional limitations. The only opinions Dr. Kolovich rendered were generalized doubts regarding Morr's ability to work. As such, the ALJ did not err in failing to give Dr. Kolovich's opinions controlling weight, as the ALJ was not required to defer to Dr. Kolovich's statements regarding disability.

### B. Issue 2: Assessment of Morr's Credibility

Morr also asserts the ALJ erred in evaluating Morr's credibility. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, and are entitled to considerable deference. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The ALJ's credibility determinations, however, must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). Credibility determinations "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reason for that weight." Social Security Ruling 96-8p, 1996 WL 374186, *4.

When a disability claimant claims disabling pain, the Commissioner must apply the two-step "Duncan Test" to determine the credibility of such complaints. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[1]

Courts do not have to discuss all of the relevant factors and an ALJ can satisfy the Duncan Test by considering most of the relevant factors. *Bowman v. Chater*, 1997 WL 764419, *4 (6th Cir. Nov. 26, 1997) (per curiam).

---

[1] These factors include the following:
> (1) the claimant's daily activities;
> (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
> (3) precipitating and aggravating factors;
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
> (5) treatments other than medication that the claimant has received to relieve the pain; and
> (6) any measures that the claimant takes to relieve his pain

Here, the ALJ discussed the relevant factors in her assessment of Morr's condition. (Tr. 38-42). The ALJ examined Morr's daily activities, Morr's treatments and Morr's responses to those treatments, and the clinical examination findings.

In assessing Morr's limitations, the ALJ determined Morr's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (Tr. 41). As such, the ALJ did not reject Morr's subjective complaints altogether. Instead, the ALJ determined that her RFC assessment adequately accounted for Morr's limitations.

The ALJ appropriately found Morr was capable of performing a limited range of light work in spite of Morr's limitations. The evidence demonstrates Morr reported good activities of daily living and had very little medical treatment between her alleged onset date and her date last insured.

Moreover, Morr testified she probably could have worked two years ago. Furthermore, after her knee surgery in 2002, she continued to work. After the date last insured, Morr had surgery on her left knee, which caused her to be placed on a walker and a cane by her doctor.

Additionally, Morr's alleged medical complaints are not supported by medical findings and they are contradicted by medical doctors, the assessments of the consultative examiner, the vocational expert's testimony, and Morr's own activities including providing for her own personal grooming, cleaning, cooking daily for up to an hour, watching television, washing dishes three times daily, doing laundry, caring for cats, and driving. (Tr. 41-42).

Accordingly, the ALJ did not provide boilerplate language in assessing Morr's credibility. The ALJ specifically compared Morr's alleged health symptoms to other evidence in the record and found Morr's subjective complaints were inconsistent with the objective medical evidence in the record. Such inconsistency is an appropriate basis for an adverse credibility finding. *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (When an ALJ finds contradictions among medical reports, the claimant's testimony, and other evidence, discounting credibility is appropriate).

Consequently, the ALJ appropriately evaluated Morr's credibility.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. The Magistrate Judge's Report and Recommendation be, and the same hereby is, adopted by this Court. (Doc. 21).

2. Accordingly, the Court overruled plaintiff's objections.

3. The decision of the Commissioner is affirmed.

4. This action is hereby dismissed.


So ordered.


/s/ James G. Carr
Sr. U.S. District Judge